KILPATRICK TOWNSEND & STOCKTON LLP
Caroline Y. Barbee (CA Bar No. 239343)
CBarbee@ktslaw.com
Dennis L. Wilson (CA Bar No. 155407)
DWilson@ktslaw.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:   (310) 777-3735
Facsimile:   (310) 388-3125

Kristin M. Adams (*Pro Hac Vice* pending)
KMAdams@ktslaw.com
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone:   (404) 815-6500
Facsimile:   (404) 815-6555

Attorneys for Plaintiff
META PLATFORMS, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>Lý Văn Lâm,<br><br>*Defendant*. | CASE NO.: 3:26-cv-1656<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

`

Plaintiff Meta Platforms, Inc. ("Meta") alleges the following:

**INTRODUCTION**

1. Since at least October 2023 and continuing through at least May 2025, Defendant Lý Văn Lâm ("Defendant") operated a deceptive and misleading advertising scheme on Facebook and Instagram.

2. Defendant ran ads on Facebook and Instagram pretending to offer deeply discounted items from a variety of well-known brands such as Longchamp, Nike, Chanel, Lego, Apple, Tide, Gucci, Moncler, Pandora, Patagonia, Sephora, Temu, and numerous others in exchange for taking a survey. When Facebook or Instagram users clicked on one of Defendant's ads, the users were redirected to websites where they were asked to answer questions in order to purchase the item depicted in the ad. Users who answered the questions and completed a purchase did not receive the advertised items. This practice is known as a "non-delivery scheme." Additionally, users who answered the questions and completed a purchase received recurring unauthorized charges on their credit cards. This practice is known as "subscription fraud."

3. To circumvent Meta's advertisement review process and conceal his fraudulent scheme, Defendant ran deceptive ads using a process known as "cloaking." Cloaking is a "bait-and-switch" technique used to hide the true nature of the website linked to an ad from Meta, meanwhile presenting different content to users who click on the ad. In a further attempt to conceal his fraudulent scheme from Meta and its users, Defendant blocked customer complaints and negative product reviews placed on Defendant's Facebook Pages.

4. Defendant's actions violate Meta's Terms of Service that govern the use of Facebook ("Meta Terms"), Instagram's Terms of Use ("Instagram Terms"), Meta's Commercial Terms, Meta's Advertising Standards (collectively, "Meta's Terms and Policies"), and California law. Accordingly, Meta now brings this action for a permanent injunction that prohibits Defendant from continuing his fraudulent scheme, and to recover damages.

**PARTIES**

5. Plaintiff Meta is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California. Meta owns and operates several services, including Facebook,

Instagram, and WhatsApp.

6. Defendant Lý Văn Lâm is a resident of Hanoi, Vietnam. As alleged herein, Lý Văn Lâm used Meta's ad services to run deceptive and fraudulent ads, including in furtherance of his non-delivery and subscription fraud schemes.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity between Plaintiff and Defendant exists, and because the amount in controversy exceeds $75,000.

8. The Court has personal jurisdiction over Defendant because he created, controlled, and used multiple Facebook and Instagram accounts and thereby had notice of and agreed to the Meta Terms and Instagram Terms, which each contain a forum selection clause that requires Defendant to submit to the jurisdiction of the U.S. District Court for the Northern District of California or a state court located in San Mateo County.

9. The Court also has personal jurisdiction over Defendant because Defendant purposefully directed his conduct at California and at Meta, which has its principal place of business in California. For example, Defendant purposefully used Meta's ad services to purchase and run deceptive and misleading advertisements on Facebook and Instagram. Additionally, Facebook and Instagram users in California clicked on Defendant's deceptive and misleading ads. Plaintiff's claims arise directly from and relate to these California contacts.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the threatened and actual harm to the Plaintiff occurred in this district. Additionally, by agreeing to the forum selection clauses, Defendant agreed that venue in this Court is proper.

11. Pursuant to Civil L.R. 3-2(c), this case may be assigned to either the San Francisco or Oakland division because Meta is located in San Mateo County.

**FACTUAL ALLEGATIONS**

**I.     Background on Meta**

12. Meta owns and operates Facebook, an online service that is available on computers and mobile devices which helps give people the power to build community, share life's moments

and discuss what is happening, and discover and connect to interests through Feed, Reels, Stories, Groups, Marketplace, and more.

13. Meta also owns and operates Instagram, a free photo and video sharing service and mobile application. Instagram users can upload photos and videos to Instagram and share them with others. They can also view, comment on, and like posts shared by others on Instagram.

14. Meta also owns WhatsApp, an encrypted communication service available on mobile devices and desktop computers. WhatsApp relies on Meta's infrastructure, such as servers, to support people around the world with fast, reliable, and private services.

15. In addition to Facebook, Instagram, and WhatsApp, Meta also operates various business and advertising services (collectively, "Meta's Services").

**II.     Advertising on Facebook and Instagram**

16. At all relevant times, including from October 2023 and continuing through present, businesses and individuals with a Facebook or Instagram account could create and place ads on Facebook and Instagram.

17. To create and publish an ad on Facebook, an advertiser must agree to the Meta Terms, Meta's Commercial Terms, and Meta's Advertising Standards. To advertise on Instagram, an advertiser must additionally agree to the Instagram Terms. Advertisers are also subject to Meta's Community Standards and Instagram's Community Guidelines.

18. Ads are subject to Meta's ad review system and process, which relies primarily on automated tools that review ads for compliance with Meta's Community and Advertising Standards. This automated review happens before an ad can run, and is typically completed within 24 hours. Ads may also be subject to additional review after they are published.

19. The ad review process may include review of the image, video, text, and the ad's associated landing page ("landing page"). The landing page is the website or other destination a user will be redirected to when the user clicks on an ad. If the landing page violates Meta's Community or Advertising Standards, the ad will be rejected.

20. Meta can also take a range of enforcement actions against a user who violates Meta's Advertising Standards, including restricting the user's ability to run advertisements or revoking the

user's license to access Meta's services and disabling the user's accounts.

21. A Facebook Page is a public page on Facebook designed for businesses, organizations, and public figures. Only a Facebook user can create or manage a Facebook Page. Facebook Pages are managed by Facebook users who have the role of administrators or moderators.

22. Facebook Page administrators and moderators can create and run ads and promotions on behalf of their Facebook Pages.

23. Any Facebook user can leave comments on a Facebook Page. Facebook Page administrators and moderators, however, have the ability to control the content users post on their Facebook Page. Administrators or moderators can choose to block specific words or phrases from appearing on their Facebook Pages. When someone comments on a Facebook Page using a word that the Facebook Page administrator or moderator has blocked, the comment is hidden from the Facebook Page.

### III.     Cloaking

24. "Cloaking" is a technique used to circumvent Meta's ad review process in order to deliver content on a landing page that violates Meta's Community and Advertising Standards.

25. Cloaking is used to misrepresent the landing page linked in an ad as compliant to Meta and its ad review system, while simultaneously promoting non-compliant goods or services to Facebook and Instagram users visiting the same URL. Essentially, the web server hosting the landing page is programmed to display a landing page to Meta's review system that falls within the bounds of the Community and Advertising Standards, when in fact, the true landing pages displayed to users frequently promote deceptive products, services, and schemes, and display disallowed images.

**Figure 1: Facebook Ad Review and Cloaking**



IV. **Meta's Terms and Policies**

   a. **The Meta Terms**

26. All Facebook users must agree to the Meta Terms (available at https://www.facebook.com/terms.php) and other rules that govern access to and use of Facebook (collectively, "Meta Terms and Policies").

27. At all relevant times, including from October 2023 and continuing through present, the Meta Terms have prohibited, among other things, violations of Meta's Community Standards (see https://transparency.meta.com/policies/community-standards and https://transparency.meta.com/policies/community-standards/spam/), Meta's Advertising Standards (see https://transparency.meta.com/policies/ad-standards/), and Meta's Commercial Terms (see https://facebook.com/legal/commercial_terms).

28. At all relevant times, including from October 2023 and continuing through present, the Meta Terms have prohibited users from doing or sharing anything "that is unlawful, misleading, discriminatory or fraudulent (or assists someone else in using our Products in such a way)."

29. At all relevant times, including from October 2023 and continuing through present, the Meta Terms have prohibited users from doing anything to "impair the proper working, integrity, operation, or appearance of our services, systems, or Products."

   b. **The Instagram Terms**

30. Everyone who uses Instagram agrees to the Instagram Terms and to other rules that govern access to and use of Instagram, including Meta's Community Standards.

31. At all relevant times, including from October 2023 and continuing through present, the Instagram Terms have prohibited users from doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose."

32. At all relevant times, including from October 2023 and continuing through present, the Instagram Terms have prohibited users from doing "anything to interfere with or impair the intended operation of [Instagram]."

### c.     Meta's Commercial Terms and Ad Standards

33. The Meta Commercial Terms (available at https://www.facebook.com/legal/commercial_terms) apply to access and use of Meta Products, including Facebook and Instagram, for any business or commercial purpose. Business and commercial purposes include, but are not limited to, using ads, selling products, and managing a Facebook Page for business purposes.

34. At all relevant times, including from October 2023 and continuing through present, Meta's Commercial Terms have required users to "ensure that any third party on whose behalf you access or use any Meta Product for any business or commercial purpose will abide by the applicable terms of use, including these Commercial Terms, the Meta Terms of Service, and any applicable supplemental terms" and to "represent and warrant that you have the authority to bind that third party to such terms."

35. At all relevant times, including from October 2023 and continuing through present, Meta's Commercial Terms have required that "access or use of the Meta products for business or commercial purposes complies with all applicable laws, rules, and regulations."

36. Meta's Advertising Standards specify what types of ad content are allowed by people or entities that advertise across the Meta Products.

37. At all relevant times, including from October 2023 and continuing through present, Meta's Ad Standards "appl[ied] to (1) ads and commercial content served by or purchased through Meta . . . , (2) ads appearing within apps on Meta [e.g., Facebook], and (3) ads on Instagram." Meta's

Ad Standards equally apply to ads Meta users create and run, or cause to be created and run, on behalf of third parties.

38. At all relevant times, including from October 2023 and continuing through present, Meta's Ad Standards have "prohibit[ed] ads promoting products, services, schemes or offers using deceptive or misleading practices, including those meant to scam people out of money or personal information."

39. At all relevant times, including from October 2023 and continuing through present, Meta has prohibited cloaking.

### V. Defendant Agreed to the Meta and Instagram Terms and Policies

40. At all relevant times, including from October 2023 and continuing through present, Defendant had notice of, agreed to, and was bound by the Meta and Instagram Terms and Policies.

41. Between June 23, 2014 and August 16, 2025, Defendant Lý Văn Lâm created, controlled, and used multiple Facebook user accounts and thereby had notice of and agreed to the Meta Terms, including:

   (a) Lý Văn Lâm created a Facebook user account on or about June 23, 2014, with the name "Lâm," which he then controlled and used.

   (b) Lý Văn Lâm created a Facebook user account on or about November 16, 2020, with the name "Lâm Lâm," which he then controlled and used.

   (c) Lý Văn Lâm created a Facebook user account on or about April 5, 2023, with the name "Thanh Thanh," which he then controlled and used. He later changed the name to "Lâm Lâm."

   (d) Lý Văn Lâm created a Facebook user account on or about May 2, 2025, with the name "Lâm Lâm," which he then controlled and used.

   (e) Lý Văn Lâm created a Facebook user account on or about August 16, 2025, with the name "Lâm Lâm," which he then controlled and used.

   (f) Lý Văn Lâm also controlled and used one or more other Facebook user accounts during this time.

42. Between June 25, 2021 and October 28, 2023, Defendant Lý Văn Lâm created,

controlled, and used at least two Instagram user accounts and thereby had notice of and agreed to the Instagram Terms, including:

    (a) Lý Văn Lâm created an Instagram user account on or about June 25, 2021, with the name "lam2kruoi," which he then controlled and used.

    (b) Lý Văn Lâm created an Instagram user account on or about October 28, 2023, with the name "lamlam2ca," which he then controlled and used.

43. At all relevant times, including from October 2023 and continuing through present, Defendant also had notice of, agreed to, and was bound by Meta's Commercial Terms and was required to comply with Meta's Ad Standards.

44. Defendant Lý Văn Lâm controlled and used multiple Meta business accounts with names such as "FinesseJewellery," "BM Cầm Fanpage B.Lâm," and "Raul Jenkins" and thereby had notice of and agreed to Meta's Commercial Terms and Meta's Ad Standards.

45. Defendant Lý Văn Lâm created at least two ad accounts and controlled multiple others that he used to place ads on Facebook and Instagram and thereby had notice of and agreed to Meta's Commercial Terms and Meta's Ad Standards.

46. Defendant Lý Văn Lâm created and administered multiple Facebook Pages starting no later than February 2023, including:

    (a) Lý Văn Lâm created a Facebook Page with the name "Tiện ích Việt" on or about February 27, 2023, which he then controlled and used.

    (b) Lý Văn Lâm created a Facebook Page with the name "Đồ Chơi Trẻ Em" on or about March 13, 2023, which he then controlled and used.

    (c) Lý Văn Lâm created a Facebook Page with the name "Ads Identity Page" on or about August 26, 2024, which he then controlled and used.

    (d) Additionally, Defendant Lý Văn Lâm created, managed or used numerous other Facebook Pages with names such as "Cheep Store," "Sun Flower Shop," "Tom Business," "Mike Store," and "Smart Decor Market."

### VI. Defendant's Non-Delivery and Subscription Fraud Schemes

47. Since at least October 2023, Defendant has operated non-delivery and subscription

fraud schemes using Facebook and Instagram ads targeted at users in, among other countries, the United States, France, Japan, and Vietnam.

48. Defendant's scheme generally proceeded in the following steps:

(a) Defendant created Facebook and Instagram accounts.

(b) Defendant placed ads on Facebook and Instagram, including through Facebook Pages under his control. To lure users to click on his ads, Defendant's ads offered deep discounts on luxury and name-brand items.

(c) Users who clicked on Defendant's ads were taken to websites controlled by Defendant, where the user was asked to fill out a short survey. Once a user filled out the survey, the website prompted users to provide credit card and personal information in order to purchase the advertised item.

(d) After users filled out the surveys and completed the purchase by providing credit card and personal information, Defendant never sent the advertised merchandise. Additionally, Defendant placed recurring unauthorized charges on users' credit cards.

(e) Defendant took steps to conceal his scheme, including by cloaking the landing pages of his ads and by blocking and removing customer complaints and negative reviews from his Facebook Pages. The cloaking and removal of negative comments were designed to mislead, deceive, and misrepresent the true nature of Defendant's ads by concealing the landing pages and negative comments by users that exposed Defendant's non-delivery and subscription fraud schemes.

**a.   Defendant Placed Deceptive and Misleading Ads and Redirected Users Away from Meta's Services**

49. Starting no later than October 2023 and continuing to at least May 2025, to facilitate his non-delivery and subscription fraud schemes, Defendant placed thousands of deceptive and misleading ads on Facebook and Instagram. These ads offered users the opportunity to receive deeply discounted luxury and name brand products, such as Longchamp Le Pliage bags, Lego sets, Gucci gift sets, and Patagonia jackets. *See, e.g.*, Exhibit 1. When users clicked these ads, they were

COMPLAINT                                                                                                   - 9 -
CASE NO.: 3:26-CV-1656

1    redirected away from Meta's services to websites controlled by Defendant.

2    50.    After arriving at Defendant's websites, users were given the opportunity to answer questions in order to win or purchase at a deeply discounted price the advertised name brand item. For example, in and around March 2025, Defendant offered users the chance to win an opportunity to purchase a Longchamp Le Pliage tote bag for 2.95€ in exchange for answering three questions: (1) Are you French? (2) Have you bought anything from Longchamp? (3) Do you want to enter the drawing for the Le Pliage bag? As of February 26, 2026, Longchamp offers its Le Pliage tote bag on its website, https://www.longchamp.com/fr/fr/, for a standard price of 135.00€.

51.    After answering the questions, Defendant's websites were designed to prompt users for credit card information in order to purchase the advertised item. Some users did enter the requested information in an effort to purchase the advertised items from Defendant.

### b.    Defendant Failed to Send the Advertised Products and Charged Users Unauthorized Fees

52.    Facebook and Instagram users that clicked on Defendant's ads, filled out Defendant's questions, and attempted to purchase discounted items from Defendant never received the items they purchased, and many received unauthorized charges on their credit cards.

53.    The comments Facebook and Instagram users left on Defendant's ads frequently mentioned unfulfilled purchases and unauthorized credit card charges. User comments on Defendant's ads included:

(a) "It's a scam. They tried to charge me for games that I never ordered. I never even received the box."

(b) "Scam I never got mine!!!!!"

(c) "I ordered, paid and I haven't received anything"

(d) "I ended up with a Subscription and I didn't receive anything scam."[1]

54.    As set forth in Figure 2, starting on or about December 25, 2024, to support his non-delivery and subscription fraud schemes, Defendant published or caused to be published, an ad on Facebook and Instagram that falsely stated that users who "answer a few easy questions" could "win

---

[1] The quotes in subparagraphs (b) and (d) are translated from French.

a Lego Mystery Box filled with amazing building sets." Defendant directed the ad at users located in the United States. Users who were enticed to click on the ad were redirected to a website controlled by Defendant to complete the transaction. On or about January 10, 2025, a user who had clicked on Defendant's fraudulent Lego ad stated in a comment on the ad, "This is a scam. They stole my card information and tried to charge over 120$ on my card." Also on or about January 10, 2025, a second user commented "scam."

**Figure 2: Defendant's "Lego Mystery Box" Ad as it Appeared on Facebook**




COMPLAINT  
CASE NO.: 3:26-CV-1656

- 11 -

55. As shown in Exhibit 1 to this complaint, starting on or about March 28, 2025, Defendant published or caused to be published, an ad on Facebook and Instagram that falsely stated that "Longchamp is clearing out major stock [of Le Pliage bags] after Paris Fashion Week!" and that "for Fashion Week, Longchamp is offering one bag per French woman." The ad directed users to "Click on the button to find out if the Longchamp Le Pliage bags are still available." Defendant directed the ad at users located in France. Users who were enticed to click on the ad were redirected to a website controlled by Defendant to complete the transaction. On or about March 28, 2025, a user who clicked on Defendant's fraudulent Longchamp ad stated in a comment on the ad, "be careful I really got taken for a ride they collect your bank details and debit a sum every month!" Also on or about March 28, 2025, a second user who clicked on Defendants' fraudulent Longchamp ad commented, "[Y]ou have to give your bank card number! Beware scam!!!!"[2]

56. As shown in Figure 3, starting on or about December 23, 2024, Defendant published or caused to be published, an ad on Facebook and Instagram that showed a picture of Nike apparel and falsely stated "I wanted to share my Christmas find with you . . . I just took part in a survey, and bam, an unexpected surprise." Defendant directed the ad at users located in the United States. Users who were enticed to click on the ad were redirected to a website controlled by Defendant to complete the transaction. On or about December 25, 2024, a user who clicked on Defendant's fraudulent Nike ad stated in a comment on the ad, "I did my survey paid and still haven't received my box plus gave me a receipt to whole sale [sic] club." On or about December 28, 2024, a second user who clicked on Defendant's fraudulent Nike ad stated in a comment on the ad, "This a [] scam you [people] wanna take money from [people] everyone watch your [credit] cards I've been taking [sic] for 140 bucks since Wednesday."

//
//
//
//
//

---

[2] All quotes in this paragraph are translated from French.

**Figure 3: Defendant's Nike Ad as it Appeared on Facebook**



c. **Defendant Cloaked the Landing Pages of His Ads**

57. To conceal his fraudulent schemes from Meta and to avoid detection by Meta's ad review systems, Defendant cloaked, or caused to be cloaked, the landing pages of ads he ran on Facebook and Instagram. For example, on or about March 28, 2025, Defendant delivered or caused to be delivered an ad (Figure 4(a)) with an innocuous landing page to Meta's ad review system. As shown in Figure 4(b), the innocuous landing page appeared to be from a website belonging to Hinet Computer System, an IT outsourcing company located in Thailand. In fact, as shown in Figure 4(c),

COMPLAINT
CASE NO.: 3:26-CV-1656

- 13 -

1  Facebook and Instagram users that clicked on the ad were directed to a website controlled by
2  Defendant that told users to answer questions in order to receive a Longchamp Le Pliage tote bag
3  for 1.95€.  The ad was directed at users in France.
4  / /
5  / /
6  / /
7  / /
8  / /
9  / /
10 / /
11 / /
12 / /
13 / /
14 / /
15 /
16 / /
17 / /
18 / /
19 / /
20 / /
21 / /
22 / /
23 / /
24 / /
25 / /
26 / /
27 / /
28 / /

**Figure 4(a): Defendant's March 28, 2025 Ad as it Appeared on Facebook**





| **Figure 4(b): Screenshot from Landing Page Displayed to Meta's Ad Review System** | **Figure 4(c): Screenshot from Landing Page Displayed to Facebook and Instagram Users** |
|---|---|

 

*See* Exhibits 1–3.

**d.      Defendant Blocked Negative Comments on His Pages**

58.     Defendant attempted to conceal his scheme from Meta and its users by blocking users from posting complaints and negative reviews on Defendant's Facebook Pages. For example, on Defendant's "Suzanne Barbe" Facebook Page, Defendant blocked, or caused to be blocked, comments that included words and phrases such as "fraud," "cheating," "liars," "fake," "thieves," "scammers," "beware," "fees," "charged," "subscriptions," "monthly," and "fooled." This meant that if a user posted a comment that included any of those words, the comment would automatically be hidden from the Page.  In total, Defendant blocked, or caused to be blocked, more than 250 words and phrases associated with negative customer experience, unauthorized charges, and deceitful advertising from Facebook Pages he controlled.

**e.      Meta's Enforcement Actions Against Defendant**

59.     Meta has taken various technical enforcement actions against Defendant in an effort to stop his abusive advertising scheme, including blocking at least 119 domain names used as landing pages for Defendant's ads; disabling more than 500 Facebook user accounts, Instagram user accounts, and Ad accounts associated with Defendant; and blocking Defendant's methods of payment.

**FIRST CAUSE OF ACTION**

(Breach of Contract under California Law)

60.     Plaintiff realleges and incorporates all preceding paragraphs here.

61.     Since no later than October 2023, Defendant created, controlled, and used multiple Facebook and Instagram user accounts, advertising accounts, and Facebook Pages, and thereby received notice of, agreed to, and was bound by Meta's Terms and Policies. Meta's Terms and Policies constitute valid and enforceable agreements between Defendant and Meta.

62.     Meta has performed all conditions, covenants, and promises required of it in accordance with Meta's Terms and Policies by providing access to the Facebook and Instagram services.

63.      Defendant breached the Meta Terms, including by violating provisions that prohibit users from (1) doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized
COMPLAINT                                                                                                                          - 16 -
CASE NO.: 3:26-CV-1656

purpose," and (2) "impair[ing] the proper working, integrity, operation, or appearance of our services, systems, or Products." Defendant breached the Meta Terms by placing deceptive and misleading ads on Facebook and by submitting false and materially misleading information to Meta's ad review system.

64. Defendant breached the Instagram Terms, including by violating provisions that prohibit users from (1) doing "anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose," and (2) doing "anything to interfere with or impair the intended operation of [Instagram]." Defendant breached the Instagram Terms by placing deceptive and misleading ads on Instagram and by submitting false and materially misleading information to Meta's ad review system.

65. Defendant breached Meta's Commercial Terms, including by violating provisions requiring that "access or use of the Meta products for business or commercial purposes complies with all applicable laws, rules, and regulations." Defendant breached Meta's Commercial Terms by placing deceptive and misleading ads on Facebook and Instagram in violation of the Meta and Instagram Terms.

66. Defendant breached Meta's Advertising Standards, including by placing deceptive and misleading ads on Facebook and Instagram and by using tactics designed to circumvent Meta's ad review process by disguising the landing pages of his ads.

67. Defendant's breaches have caused Meta to incur damages, including damages attributable to the efforts and resources it used to investigate and remediate Defendant's conduct, in an amount to be proven at trial.

68. Defendant's acts as alleged herein also constitute unjust enrichment of Defendant at Meta's expense. Defendant received a benefit and profited by violating the Meta and Instagram Terms and Policies. But for Defendant's violations of the Meta and Instagram Terms and Policies, he would not have obtained such profits. Defendant's retention of the profits derived from his breach of contract would be unjust. Meta seeks an accounting and disgorgement of Defendant's ill-gotten profits in an amount to be determined at trial.

69. Defendant's breaches have caused Plaintiff to incur damages in an amount to be

proven at trial and in excess of $75,000.

70. Plaintiff has suffered irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendant's actions are enjoined. Meta is, therefore, entitled to a permanent injunction against Defendant as set forth in the Request for Relief below to stop Defendant's breaches.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter judgment against Defendant as follows:

    a. Defendant has breached his contracts with Plaintiff in violation of California law;

    b. A permanent injunction enjoining and restraining Defendant and his agents, servants, employees, successors, and assigns, and all other persons acting in concert or conspiring with any of them or who are affiliated with Defendant from:

        1. Accessing, attempting to access, and using Plaintiff's services, platforms, and computer systems, including Facebook, Instagram, and WhatsApp;

        2. Creating, maintaining, or using any Facebook or Instagram accounts, advertising accounts, Facebook Pages, or any other Meta account in violation of the Meta and Instagram Terms and Policies;

        3. Using Plaintiff's services, platforms, and computer systems to engage in any unlawful, misleading, or fraudulent activity, or facilitating others to do the same;

    c. That Plaintiff be awarded damages, including, but not limited to, compensatory damages and disgorgement of the amount Defendant has been unjustly enriched, as permitted by law, and in such amounts to be proven at trial;

    d. That Plaintiff be awarded its reasonable costs, including reasonable attorneys' Fees, as permitted by law;

    e. Pre- and post-judgment interest as permitted by law; and

    f. All other equitable and legal relief the Court deems just and proper.

## PLAINTIFF RESPECTFULLY DEMANDS A JURY TRIAL.

COMPLAINT  - 18 -
CASE NO.: 3:26-CV-1656

1
2  DATED: February 26, 2026       Respectfully submitted,

3                                  KILPATRICK TOWNSEND & STOCKTON LLP
                                   By: */s/ Caroline Y. Barbee*
4                                      Caroline Y. Barbee (CA Bar No. 239343)
                                       CBarbee@ktslaw.com
5                                      Dennis L. Wilson (CA Bar No. 155407)
                                       DWilson@ktslaw.com
6                                      1801 Century Park East, Suite 2300
                                       Los Angeles, California 90067
7                                      Telephone:    (310) 777-3735
                                       Facsimile:    (310) 388-3125

8                                  Kristin M. Adams (*Pro Hac Vice* pending)
                                   KMAdams@ktslaw.com
9                                  1100 Peachtree Street N.E., Suite 2800
                                   Atlanta, Georgia 30309
10                                 Telephone:    (404) 815-6500
                                   Facsimile:    (404) 815-6555

11
                                   Attorneys for Plaintiff
12                                 META PLATFORMS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                                           - 19 -
CASE NO.: 3:26-CV-1656